IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ADRIAN GHIOROAIE-PANAIT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 3:17-cv-698-WKW-GMB |
| | ) | [WO] |
| HENRY ROLLE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1), this case was referred to the United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law. Doc. 18. Plaintiff Adrian Ghioroaie-Panait ("Ghioroaie") filed this lawsuit on October 16, 2017, alleging discrimination on the basis of race, color, and national origin during the course of his employment as an assistant track and field coach at Auburn University ("Auburn"). Doc. 1. Now before the court is Auburn's motion to dismiss.[1] Doc. 27. After careful consideration of the parties' submissions and the applicable law, the undersigned recommends that the motion to dismiss be GRANTED in part and DENIED in part.

### **I. JURISDICTION AND VENUE**

The court has subject-matter jurisdiction over the claims in this action pursuant to

---

[1] This motion to dismiss was originally filed by the Board of Trustees of Auburn University (the "Board"). *See* Doc. 10. Ghioroaie has since filed an amended complaint replacing the Board with Auburn as a defendant, *see* Doc. 21, and Auburn then filed a reply brief in support of the motion. *See* Doc. 27. Therefore, the court construes Auburn's reply brief (Doc. 27) as a motion to dismiss the amended complaint. The court recommends that the original motion to dismiss (Doc. 10) be DENIED as moot.

42 U.S.C. § 2000e-5(f)(3). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations to support both.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The facts alleged in the amended complaint are as follows. Ghioroaie is a 57-year-old resident of Ohio who was employed by Auburn as an assistant track and field coach from 2014 to 2016. Doc. 21 at 2–3. Ghioroaie is a white man of Romanian descent and nationality. Doc. 21 at 2. At Auburn, Ghioroaie coached men's jumps—including the triple jump, high jump, and long jump—along with women's multi-events. Doc. 21 at 3. During his tenure at Auburn, Ghioroaie sought to become a lawful permanent resident of the United States. Doc. 21 at 4. In May 2015, Auburn sponsored his green card application, which included a letter from then-Athletics Director Jay Jacobs recognizing Ghioroaie "as an exceptional coach in good standing with the University." Doc. 21 at 4.

Ghioroaie's tenure at Auburn, however, was by marred by mistreatment from other coaches. Specifically, in October 2015, Ghioroaie was confronted during a coaches' meeting by fellow assistant coach Henry Rolle, a black man originally from the Bahamas. Doc. 21 at 4. Rolle threatened Ghioroaie, stating that he would "take care" of him and "destroy" his career before grabbing Ghioroaie's neck with both hands and squeezing with enough force to leave visible marks. Doc. 21 at 4. Rolle then grabbed a statue and began to swing it at Ghioroaie's head. Doc. 21 at 5. Ghioroaie attempted to record the incident with his cell phone, but head coach Ralph Spry, a black man, took the phone out of his hand. Doc. 21 at 5. This incident resulted in criminal charges, and Rolle eventually pled guilty to harassment after several witnesses testified that he threatened and physically

attacked Ghioroaie. Doc. 21 at 5. Auburn placed Rolle on administrative leave for two weeks following the incident. Doc. 21 at 5.

Spry, who described Rolle as being "like his own son and right-hand man," protected Rolle and tried to convince Ghioroaie not to file a complaint with Auburn's Human Resources Department or Athletics Department. Doc. 21 at 5–7. According to Ghioroaie, Spry then called all of the track and field coaches into his office and tried to convince them that Rolle's behavior was normal. Doc. 21 at 5. Later, during their investigation into the incident, members of Auburn's Athletics Department encouraged Ghioroaie to report that he felt safe going to work despite the fact that they knew he did not. Doc. 21 at 6. However, because Ghioroaie was dependent upon Auburn for his pending green card application and "felt pressured to drop the matter by the Auburn administration," he continued to report to work and attempted to avoid Rolle. Doc. 21 at 6. Even after the original incident, Rolle harassed Ghioroaie, telling him that he would destroy his career. Doc. 21 at 6–7. During one incident in February 2016, after Ghioroaie told Rolle that Rolle did not have the authority to command Ghioroaie to move to a different area of the track, Rolle responded that "where he came from, people get their 'head chopped off' for talking," that he "know[s] people," and that he "will have the last laugh, guaranteed." Doc. 21 at 6–7.

Because of Rolle's continued harassment and because Ghioroaie felt that Spry would not remedy the situation, Ghioroaie filed a complaint with Bernard Hill of Auburn's Human Resources Department on March 1, 2016. Doc. 21 at 7. In the complaint, Ghioroaie cited the verbal abuse from Rolle and stated that he should not be mistreated because of his

"nationality, skin, accent and other differences." Doc. 21 at 7.  After the written complaint, Hill told Ghioroaie that "it did not matter whose fault the situation between Ghioroaie and Rolle was," and Spry told Ghioroaie to "stop going after" Rolle. Doc. 21 at 7.  As a solution, the Human Resources Department proposed only that Ghioroaie avoid Rolle and refrain from speaking to him. Doc. 21 at 7.

Shortly after he filed the complaint with human resources, Ghioroaie was informed that Spry would be formally evaluating his work performance.  This occurred more than two years after he was hired in January 2014, and was the first evaluation during his tenure at Auburn. Doc. 21 at 8.  Eventually, on May 1, Spry notified Ghioroaie that Auburn would not renew his employment contract and asked him to return his office keys, employee identification card, and cell phone. Doc. 21 at 8.  Spry told Ghioroaie that his nonrenewal was without cause. Doc. 21 at 8.  Spry also asked Ghioroaie whether he remembered complaining to the university about Rolle and Spry, which Ghioroaie interpreted to be an indication of the true basis for Auburn's decision not to renew his contract. Doc. 21 at 8.  After May 1, Ghioroaie was forbidden from entering Auburn's track and field facilities and was told to avoid the campus. Doc. 21 at 8.  Simultaneously, Auburn released assistant coach Knut Hjeltnes (of unknown race and nationality) from his employment, but informed Hjeltnes that he would be permitted to complete the remainder of the season with his event group. Doc. 21 at 8–9.  Ghioroaie was not allowed to complete the season, which has negatively impacted his prospects for future employment. Doc. 21 at 9.  He was replaced by Greg Stringer, a black man. Doc. 21 at 9.  While Rolle, Hjeltnes, and Ghioroaie coached different events, they had the same duties and responsibilities as assistant coaches and all

4

reported to Spry. Doc. 21 at 9.

Under Ghioroaie's watch, Auburn's track and field team experienced "tremendous success," with Ghioroaie's athletes accounting for 21 of the men's team's 24 total National Collegiate Athletic Association ("NCAA") points[2] at the Southeastern Conference's indoor track championship in 2016. Doc. 21 at 3.  Even though the team had five other coaches, Ghioroaie's athletes accounted for 26.5 of the team's 47.5 total NCAA points during his time at Auburn, and at least two of his athletes earned Auburn's most valuable player awards. Doc. 21 at 4.

Ghioroaie filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on October 26, 2016. Doc. 1-1.  The EEOC could not conclusively determine whether Ghioroaie's claim had merit, and it issued a "Dismissal and Notice of Rights," commonly known as a right-to-sue letter, on July 18, 2017. Doc. 1-2.  Ghioroaie then filed suit on October 16, 2017 against Rolle and Auburn's Board of Trustees. Doc. 1.  After Rolle and the Board filed motions to dismiss, Ghioroaie filed an amended complaint on December 11, 2017, naming Auburn, Rolle, and Spry as defendants. *See* Docs. 10, 11 & 22.  Auburn then filed its reply brief in support of the Board's motion to dismiss (Doc. 27), which the court construes as a motion to dismiss on behalf of Auburn.

### III.  STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "take the factual allegations in the complaint as true and

---

[2] NCAA points are "the standard by which track and field coaches define success." Doc. 21 at 3.

construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *id*, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

## IV. DISCUSSION

In the amended complaint, Ghioroaie asserts claims against Auburn for discrimination on the basis of his race, color, and national origin, along with a retaliation claim. For the reasons that follow, the court recommends that Auburn's motion to dismiss his claim based on color discrimination be granted,[3] but that the motion be denied with

---

[3] In its briefing, Auburn does not mention that color discrimination is an independent form of discrimination, and instead groups it together with Ghioroaie's race and national origin discrimination claims. *See Gill v. Bank of Am. Corp.*, 2015 WL 4349935, at *4 (M.D. Fla. July 14, 2015) ("[C]olor discrimination is distinct from race discrimination in that the former arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as the case when a dark colored African-American individual is discriminated against in favor of a light-colored African-American individual.") (citations and internal quotation marks omitted). But Ghioroaie does not allege any facts supporting a claim for color discrimination. *See* Doc. 21 at 14–15 ("By allowing Plaintiff, white, to be continuously harassed by another staff member, black, and failing to provide support to Plaintiff or protect Plaintiff from physical assault by another employee, and failing to renew his contract, [Auburn] violated Title VII of the Civil Rights Act."). Accordingly, any claim predicated on a theory of color discrimination is due for dismissal.

6

respect to all other claims.

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits employers from discriminating against an employee on the basis of his race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). To state a claim for employment discrimination under Title VII, "a complaint need only provide enough factual matter (taken as true) to suggest" intentional discrimination. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245–46 (11th Cir. 2015) (citation and internal quotation marks omitted). It is not necessary for a complaint to make out a "classic *McDonnell Douglas prima facie* case" of employment discrimination in order to state a viable Title VII claim. *Id.* at 1246 (citation and internal quotation marks omitted). That is because the *McDonnell Douglas prima facie* case is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). "Consequently, the ordinary rules for assessing the sufficiency of a complaint apply." *Id.* Thus, a complaint that "plausibly suggest[s] that the plaintiff suffered an adverse employment action due to" intentional discrimination is sufficient. *Surtain*, 789 F.3d at 1246.

**A.     Disparate Treatment Based on Race and National Origin**

Ghioroaie asserts disparate treatment and retaliation theories of liability under Title VII. To establish a *prima facie* disparate treatment case, "a plaintiff must show (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). Although the plaintiff need not plead each element of the *prima facie* case, "the elements

are a helpful guide, and the crux . . . is that someone outside the class was treated more favorably than the plaintiff." *Davis v. Infinity Ins. Co.*, 2016 WL 4507122, at *12 (N.D. Ala. Aug. 29, 2016); *see also McCurdy v. State of Ala. Disability Determ. Serv.*, 2015 WL 5737103, at *6–7 (M.D. Ala. Sept. 30, 2015).

Auburn argues that Ghioroaie has failed to allege an adverse employment action, one of the essential elements of the classic *prima facie* case for disparate treatment. Doc. 27 at 2–4.  Next, Auburn generally attacks the sufficiency of Ghioroaie's allegations, contending that he "has failed to plausibly allege that any action by the [university] was related to his race, color, or national origin." Doc. 27 at 5.

In the amended complaint, Ghioroaie alleges that he is a white man of Romanian descent and nationality.  He claims that he was verbally harassed, threatened, and on one occasion physically assaulted by Rolle, which both Spry and the administration at Auburn ignored.  Shortly after filing a complaint with Auburn's Human Resources Department, Auburn placed Ghioroaie under review by Spry and then decided not to renew his contract, replacing him with a black man. Doc. 21 at 8–9.  At the same time, Auburn retained Rolle despite his criminal conviction for harassing Ghioroaie. Doc. 21 at 9.  Auburn did not provide a reason for its decision to let Ghioroaie go and told him that it was without cause. Doc. 21 at 8.  Spry did, however, reference Ghioroaie's prior complaints and the "unsafe, abusive and stressful working environment." Doc. 21 at 8.  Ghioroaie further alleged that Spry and Rolle had a close relationship, that Spry encouraged him not to file, and then later to drop, his complaint against Rolle and that, after the assault in October 2015, Spry's demeanor toward Ghioroaie was "cold." Doc. 21 at 5, 7 & 9.  Ghioroaie specifically alleged

8

that Spry, Auburn's administration, its Athletics Department, and its Human Resources Department ignored his complaints, "turning a deaf ear" to Rolle's behavior and, in fact, actively siding with Rolle. Doc. 21 at 12.  Ghioroaie maintains that his job performance was exemplary and that he had never been subjected to a formal evaluation until after his complaint to the Human Resources Department in January 2014. Doc. 21 at 3–4 & 8.

As courts in this and other districts have noted, a Title VII plaintiff states a plausible employment discrimination claim when he alleges that he has been treated less favorably than a similarly situated individual outside of his protected class, or that he was released from his employment and replaced with a person outside of his protected class. *See, e.g.*, *Barclay v. First Nat. Bank of Talladega*, 2014 WL 5473829, at *3–4 (N.D. Ala. Oct. 28, 2014); *Powell v. Harsco Metal*, 2013 WL 3242759, at *5–6 (N.D. Ala. June 20, 2013); *Foster v. Auburn Univ. Montgomery*, 2011 WL 6140965, at *4 (M.D. Ala. Dec. 8, 2011); *Martin v. Auburn Univ. Montgomery*, 2011 WL 6140999, at *3 (M.D. Ala. Dec. 8, 2011). For example, in *Barclay*, the court held that the plaintiff, a black woman, stated plausible failure-to-promote and termination claims by identifying similarly situated individuals outside of her protected class who were treated more favorably and by alleging that she was passed over for a promotion in favor of a white coworker. *See Barclay*, 2014 WL 5473829, at *3–4.  Similarly, in *Powell*, a disparate treatment claim survived a motion to dismiss where a black-male plaintiff alleged that he was involved in an altercation with two white coworkers, but that he was suspended while the coworkers were not. *See Powell*, 2013 WL 6140965, at *5–6.  And in *Foster* and *Martin*, a court within this district observed that the viable methods for establishing a plausible Title VII claim include (1) alleging that

9

the plaintiff was qualified for but released from his employment and replaced by an individual outside of his protected class, and (2) identifying a similarly situated coworker outside of the plaintiff's protected class who was treated more favorably. *See Foster*, 2011 WL 6140965, at *4; *Martin*, 2011 WL 6140999, at *3.

Here, Ghioroaie has alleged that he is white and Romanian, that he was qualified for his role as an assistant track and field coach, that he was subjected to an adverse employment action when Auburn declined to renew his employment contract,[4] and that Rolle, a similarly situated black coworker from the Bahamas, was treated more favorably.[5] He also has alleged that he was replaced by Greg Stringer, a black man. By identifying similarly situated coworkers who were treated more favorably and alleging that he was replaced by an individual outside of his protected classes, Ghioroaie has stated plausible employment discrimination claims based on race and national origin.

Implicit in Auburn's arguments is a request that the court hold Ghioroaie to a higher standard than would be appropriate at this stage of the proceedings. To survive a Rule 12(b)(6) motion, Ghioroaie must plausibly suggest discrimination such that the court may infer that it has occurred. He has done so. If he cannot prove that discrimination, he may

---

[4] The court disagrees with Auburn's contention that its decision not to renew Ghioroaie's contract in the context of the rest of Ghioroaie's allegations cannot constitute an adverse employment action. An adverse employment action is a "serious and material change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). The nonrenewal of an employment contract ends the employment, and is therefore a material change in the terms, conditions, and privileges of that employment. For purposes of this analysis, it may constitute an adverse employment action. *See, e.g.*, *Calhoun v. McHugh*, 2 F. Supp. 3d 1217, 1237 (N.D. Ala. 2014) (concluding that the nonrenewal of an employment contract is an adverse employment action and gathering cases in accord).

[5] Ghioroaie also alleges that Hjeltnes was treated more favorably but does not identify Hjeltnes's race or nationality. *See* Doc. 21 at 8–9. Therefore, the court is unable to determine whether Hjeltnes is outside of Ghioroaie's protected classes.

not meet his evidentiary burden at the summary judgment stage—but that is an issue for another day. Indeed, as the Sixth Circuit has remarked, "'plausibility' occupies that wide space between 'possibility' and 'probability.'" *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678)). Ghioroaie's allegations, although not detailed, have at least suggested more than the mere possibility that Auburn discriminated against him on the basis of his race and national origin.

**B.     Retaliation**

Ghioroaie has also stated a plausible retaliation claim, alleging that Auburn decided not to renew his contract after he filed a complaint with its Human Resources Department. Doc. 21 at 13–14. To state a *prima facie* Title VII retaliation claim, a plaintiff must allege that he suffered a materially adverse employment action because he engaged in a statutorily protected activity. *See Brown v. Ala. Dept. of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010).

Auburn argues that Ghioroaie does not allege that he engaged in statutorily protected activity because, in its view, he merely complained to Auburn about the actions of a coworker, Rolle. Doc. 27 at 7. "Statutorily protected activity" includes opposing an employment practice that is unlawful under Title VII. *See* 42 U.S.C. § 2000e-3(a). And statutory protection extends to employees who "informally voice complaints to their superiors or who use their employers' internal grievance procedures." *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989).

While Ghioroaie has not detailed the precise contents of his written complaint to the Human Resources Department, he does allege that his complaint concerned both Rolle and

11

Spry. *See* Doc. 21 at 13. And Ghioroaie alleges throughout the amended complaint that Spry treated him unfairly and sided with Rolle, encouraging him not to pursue his complaint against Rolle and seeking to convince the other coaches that Rolle's behavior was normal. Doc. 21 at 5, 7 & 9. Further, Ghioroaie alleged that Spry encouraged him to "stop going after" Rolle and that Spry considered Rolle to be "like a son." Doc. 21 at 7. And Ghioroaie does explain that the complaint to human resources specifically attributed the differential treatment to his race and nationality. Doc. 21 at 7. Construing these allegations in the light most favorable to Ghioroaie, he has plausibly alleged that he opposed an unlawful employment practice or, at the very least, informally voiced a complaint to his superiors under *Rollins* when he filed the complaint with Auburn's Human Resources Department.

Auburn's arguments with respect to the remaining two elements of a *prima facie* case are no more persuasive. In the context of a retaliation claim, an "adverse employment action" includes any action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 68 (2006). Certainly, the nonrenewal of an employment contract alone would dissuade the reasonable worker from making a charge of discrimination. Ghioroaie has alleged facts sufficient to suggest that Auburn's decision not to renew his employment contract constituted an adverse employment action.

Finally, the causation element can be met either by alleging that the employer knew of the employee's protected activity when it took the adverse employment action, *see Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997), or by alleging close temporal

proximity between the protected activity and adverse employment action. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). Here, Ghioroaie has done both. First, he alleged that Auburn's Human Resource Department received his complaint, that multiple members of Auburn's administration and Spry were aware of the complaint and even mentioned it to him in conversation, and that Auburn then decided not to renew his contract. In addition, Ghioroaie has alleged that his complaint came just two months before Auburn decided to release him from his employment—a window of time short enough to demonstrate causation at the pleadings stage. *See, e.g.*, *Robinson v. LaFarge N. Am., Inc.*, 240 F. App'x 824, 829 (11th Cir. 2007) (holding a two-month delay to be sufficient for purposes of *prima facie* case); *Embry v. Callahan Eye Found. Hosp.*, 147 F. App'x 819, 831 (11th Cir. 2005) (holding a two-month delay to be "sufficiently close to establish causation"). Accordingly, the court concludes that Ghioroaie has stated a plausible retaliation claim under Title VII.

## V.  CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS that the motion to dismiss (Doc. 10) be GRANTED in part and DENIED in part, and that Ghioroaie's claim for color discrimination under Title VII be DISMISSED with prejudice. It is further ORDERED that the parties are DIRECTED to file any objections to the report and recommendation **not later than February 27, 2018**. Any objections filed must specifically identify the findings in the Magistrate Judge's report and recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this report and

recommendation is not a final order of the court and, therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the report and recommendation and shall bar the party from attacking on appeal factual findings in the report and recommendation accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 13th day of February, 2018.

/s/ Gray M. Borden
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE